UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 07-04 (CKK) |
| | : | Magistrate No. 06-488-M-02 |
| v. | : | |
| | : | |
| LADONNA N. GRAY, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, hereby submits in the above-referenced matter this memorandum in aid of sentencing of defendant LaDonna N. Gray for her conviction in a credit card fraud scheme. As is discussed below, the government requests a sentence within the applicable federal sentencing guidelines range of zero to six months, deferring to the Court as to the actual sentence within the guidelines range, and requests that defendant be ordered, jointly and severally with co-defendant Lonnell D. Duckett, Criminal Case Number 07-03 (CKK), to make restitution.

**I. FACTUAL BACKGROUND**

On January 5, 2007, the government filed a one-count Information charging defendant with access device fraud, in violation of 18 U.S.C. §§ 1029(a)(5) and 2. On January 30, 2007, defendant pled guilty to the Information. Sentencing is now set before the Court on May 11, 2007, at 9:45 a.m.

According to the Statement of Offense filed in this matter and the Presentence Investigation Report (hereinafter "PSR"), at page 3-5, ¶ 6-17, both of which were agreed to by the defendant, PSR, at page 6, ¶ 21, at all relevant times defendant worked as a customer service representative at a U-Haul office in Washington, D.C.[1] The office was staffed by a supervisor and approximately six

---

[1] The citations to the PSR are to the initial version of that report since the final version has not yet been issued and is unlikely to be issued by the due date for this sentencing memorandum.

customer service representatives, including defendant. The U-Haul office was part of U-Haul International, Inc., an international moving and storage company headquartered in Phoenix, Arizona. As part of their job responsibilities at U-Haul, only three staff; that is, the supervisor, defendant, and another customer service representative, had access to information on the office's computers listing the credit card numbers of the customers who did business with U-Haul.

Defendant had a friend, Duckett, who worked at the snack shop at the United States Department of Transportation (hereinafter "USDOT") in Washington, D.C. In or about early 2006, Duckett and defendant discussed using U-Haul customers' credit cards to pay certain expenses. Primarily, Duckett and defendant agreed on a scheme to pay traffic and parking ticket offense fines with those credit cards. As part of the scheme, Duckett would solicit individuals who had traffic and parking fines that were owed to the Washington, D.C., Department of Motor Vehicles (hereinafter "DMV"). Defendant, for her part, would obtain the credit card numbers from the U-Haul computer system for unrelated and unsuspecting people and would use the card numbers to pay the fines through the DMV on-line payment system for such fines. The scheme would involve the individual who owed fines to DMV paying Duckett or defendant half the amount of the respective fine to have that fine paid off and that Duckett and defendant would then share equally the money they received from these individuals.

One of the individuals that Duckett solicited in the scheme was an individual (hereinafter "subject #1") who also worked at the USDOT building in Washington, D.C. During a conversation between subject #1 and Duckett, subject #1 explained that she had several outstanding DMV tickets.

Duckett told subject #1 that he had a "DMV connection" that could help her with her outstanding tickets. Duckett explained that, if she paid him cash for half of the amount, the full amount of the tickets would be paid.

Subject #1 paid Duckett approximately $500 for her traffic and parking tickets and Duckett provided a phone number to subject #1 for his "DMV connection" that he identified as "D" or "Donna," who was defendant. Subject #1 contacted defendant at the telephone number provided by Duckett. Defendant asked for subject #1's vehicle tag number and told her she was checking the DMV system to verify the number of citations that were issued to subject #1.

A few days later, subject #1 again contacted defendant at the telephone number given her by Duckett and asked for a receipt to prove the DMV fines had been paid. Subject #1 received a facsimile from defendant showing $1,500 of the fines were paid; the fax also displayed defendant's telephone number. Defendant paid these fines in the period of on or about April 26, 2006, to on or about May 1, 2006, using the credit card numbers of two different U-Haul customers (complainants #1 and #2).

Subject #1 provided Duckett's contact information to a fellow co-worker (hereinafter "subject #2") at USDOT who had several outstanding traffic and parking fines. Subjects #1 and #2 met with Duckett at which time Duckett was paid by subject #2 $300 for $600 owed in tickets by subject #2 to DMV.

On or about May 17, 2006, defendant, using credit card numbers for two other U-Haul customers (complainants #3 and #4), paid the traffic and parking fines to DMV for subject #2 in return for Duckett receiving the $300 from her.

Another employee of the U-Haul business where defendant worked (hereinafter "subject #3") also approached defendant and asked her to pay his tickets for half the price he owed on tickets for vehicle moving violations. Subject #3 gave defendant $300 to pay the $600 dollars he owed in fines to DMV.

Duckett also gave defendant approximately $200 to pay, using customers' credit cards from U-Haul, his Direct TV cable bills, which were approximately $400. Further, as part of the scheme, defendant agreed to pay, using customers' credit cards from U-Haul, approximately $700 worth of traffic tickets that Duckett had accumulated.

In total, defendant, aided and abetted by Duckett, used approximately nine to ten credit card numbers on file with U-Haul to pay fines and bills for approximately six to seven different people.

The credit card company, Citigroup, for which defendant, aided and abetted by Duckett, used the numbers was headquartered outside of Washington, D.C., and was involved in interstate commerce. Furthermore, some of the U-Haul customers whose cards were used lived outside of the District of Columbia.

## II. SENTENCING FACTORS

Title 18, United States Code, Section 3553(a), provides numerous factors that the Court shall consider in sentencing a defendant. These factors are discussed below numbered as they are in Section 3553(a).

(1) The Court should consider the nature and circumstances of the offense. Here, the offense involved credit card fraud and was a blatant misuse of position by defendant, aided and abetted by Duckett, and for the benefit of both. The offense negatively effected numerous victims, both individuals and organizations, including, among others U-Haul, DMV and Citigroup.

Correspondence from some of the individual victims is attached herewith, which correspondence shows, in part, the negative impact of the offense.

The Court should also consider the history and characteristics of the defendant. In this matter, defendant has no prior criminal record. PSR, at page 7, ¶ 35; page 9, ¶¶ 47-53.

(2) The Court should also consider the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; (C) to protect the pubic; and (D) to provide defendant with appropriate education or vocational training. In this matter, as discussed above, the offense was serious and requires adequate punishment. The sentence should also be of such a nature so as to deter others from engaging in similar conduct and to protect the public from other criminal acts by defendant. As to the final consideration, defendant does not appear to need further education or vocational training.

(3) The Court should consider the kinds of sentences available. The maximum term of imprisonment for this offense is 15 years, with a term of supervised release of 3 years, but the defendant, alternatively, is eligible for up to five years of probation. PSR, at page 11-12, ¶¶ 56, 60, and 63.

(4) The Court should also consider the sentencing range established by the United States Sentencing Guidelines (hereinafter "USSG"). As to these guidelines, the probation officer believes that the defendant's resulting Total Adjusted Offense Level for the offense is 6, her Criminal History category is I, and her USSG range is 0 to 6 months. PSR, at page 6, ¶ 32, and page 11, ¶ 57.[2]

---

[2] In the PSR, at page 5, ¶ 18, the loss amount is listed as $5,462.75, while the total from the Statement of Offense is $3,800. If the first figure is used, it effects, but only slightly, the USSG calculation, as well as the restitution amount, *see* PSR, at page 14, ¶ 81. As to the USSG

Because the applicable guidelines range is in Zone A, defendant is eligible for probation. *Id.*, at page 11, ¶ 63.

(5) The Court should consider any pertinent policy statement issued by the Sentencing Commission. The government is not aware of any pertinent statements beyond those captured in the applicable sentencing guidelines range, which is discussed above.

(6) Moreover, the Court should consider the need to avoid unwarranted sentencing disparities among defendants with similar records. Here, a guidelines sentence would help prevent such disparities between defendant and similar defendants, including, among others, co-defendant Duckett.

(7) Finally, the Court should consider the need to provide restitution. In this matter, an appropriate restitution order would require defendant to be jointly and severally liable with co-defendant Duckett to Citigroup and DMV. *See* PSR, at page 13, ¶ 73.

---

calculation, the more than $5,000 amount adds 2 offense levels, *see* PSR, at page 6, ¶ 26, and makes the total offense level 6, *see* PSR, at page 6, ¶ 33, as opposed to 4, as set forth in the plea letter, at page 2, ¶ 3B. This, however, has no practical effect as to the length of punishment since the USSG range is still 0-6 in Zone A. *See* PSR, at page 12, ¶ 66. The only potential practical effect is that the lower number in the fine range for a level 6 is $500, PSR, at page 13, ¶ 78, while for a level 4, it is $250. USSG § 5E1.2(c)(3); Plea letter, at page 3, ¶ 3D. This factor appears to be of no significance, however, because defendant does not have the ability to pay a fine. PSR, at page 11, ¶ 63. Therefore, while the government would prefer that the PSR use the level 4, consistent with the Statement of Offense and the plea letter, it does not advocate strongly for this in light of the applicable preponderance standard for fact finding at sentencing, *see* United States v. Bras, ___ F.3d ___, 2007 WL 1159752, *3-*5 (D.C. Cir. April 20, 2007); United States v. Dorcely, 454 F.3d 366, 372-73 (D.C. Cir. 2006), and the lack of any practical effect by using the level 6 instead of 4.

As to restitution, as stated in the plea letter, defendant "agrees to make restitution to all victims of [her] criminal conduct and not merely for those victims included in the count to which [she] agrees to plead guilty." Plea letter, at page 4, ¶ 8. Accordingly, as agreed to by defendant in the plea letter, the full amount of restitution is appropriate.

### III. RECOMMENDATION

Defendant, aided and abetted by co-defendant Duckett, used her position with U-Haul to steal and misuse this credit card information for the benefit of defendant and Duckett. This misuse of credit card information occurred over a period of time and involved defendant obtaining and misusing credit card information for a number of individuals. This conduct, with its resulting harm to the individual victims and the organizational victims, including, among other, U-Haul, DMV, and Citigroup, is serious conduct that needs to be punished adequately. Credit card fraud is a growing problem nationwide and one that needs to be seriously addressed.

At the same time, defendant quickly admitted her guilt after her arrest and agreed to make restitution. Moreover, although defendant is twenty-seven years old, she has no prior criminal record.

Accordingly, the government requests that the Court impose a sentence within the guidelines range, but defers to the Court as to the actual sentence. *See* United States v. Bras, ___ F.3d ___, 2007 WL 1158752, *3 (D.C. Cir. April 20, 2007) (*quoting* United States v. Dorcely, 454 F.3d 366, 376 (D.C. Cir. 2006)) ("a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness"). Furthermore, as part of the plea, defendant agreed to make restitution to the victims in this matter. Plea Letter, at page 4, ¶ 8; *see* PSR, at page 3, ¶ 4, and page 13, ¶ 73. The government respectfully requests that the Court order the defendant to pay

restitution jointly and severally with Mr. Duckett. It does not appear, however, that defendant has the ability to pay a fine. PSR, at page 10, ¶ 55.

          Respectfully Submitted,

          JEFFREY A. TAYLOR
          UNITED STATES ATTORNEY
          D.C. Bar Number 498610

By:      / s /
_____
DANIEL P. BUTLER
D.C. Bar #417718
Assistant U.S. Attorney
555 4th Street, N.W., Room 5231
Washington, D.C. 20530
(202) 353-9431
Daniel.Butler@usdoj.gov


Julie Edwards

March 19, 2007

Assistant United States Attorney Daniel Butler
Fraud and Public Corruption Section
U.S. Attorney's Office for the District of Columbia
555 4th Street N.W.
Washington D.C. 20530

RE: United States v. Lonnell Duckett and LaDonna Gray, 07-003 and 07-004 (CKK)

Dear Mr. Butler:

Last spring, charges appeared on my credit card totaling more than five hundred dollars that I had not authorized.

I promptly canceled my credit card and reported the fraudulent charges to both my bank (Citibank) and the DC Office of the Inspector General. Once a new card was issued, I gave that number to a Washington, DC, U-Haul that was authorized to charge my card every month for the rental of storage space – only to find fraudulent charges on the new card the following month. Later I learned that an employee at the U-Haul had participated in stealing my credit information.

I had to cancel the second card as well.

Thankfully, Citibank did not hold me accountable for the charges that were made without my permission. But the entire situation was very troubling and required me to spend a great deal of time cancelling cards, filling out and express mailing affidavits (at my own expense), and following up with the DC Inspector General's Office.

The illegal activity impacted my quality of life and I am concerned that it could taint my credit record for years to come.

I have worked hard to maintain a good credit record and it is very frustrating that the actions of these individuals could undermine that effort. I hope that the court will take into account that the individuals who recklessly entered my life showed no hesitation about stealing my credit information a second time, even after they should have been aware something was amiss (ie when I changed the card number at U-Haul). The fact that they continued their theft illustrates to me that they were not worried about being caught, or if caught, they were not worried about harsh penalties.

I hope that the Court sends them a message that theft is theft regardless of the manner in which it is carried out.

Thank you for your consideration.

Sincerely,

Julie Edwards

**Butler, Daniel (USADC)**

| | |
|---|---|
| **From:** | Graydon Forrer [███████████] |
| **Sent:** | Monday, April 16, 2007 5:10 PM |
| **To:** | Butler, Daniel (USADC); Derek Anderson |
| **Subject:** | RE: Gray/Duckett |
| **Importance:** | High |

Mr. Butler/Agent Anderson: I hope that the following is useful Let me know if you need anything else. Grady Forrer

April 16, 2007

U.S. vs. Lonnell Duckett and LaDonna Gray
Case # 07-003 and 07-004

To Whom It May Concern:

I rent storage space at the U-Haul Storage Rental facility located at 26 K Street, N.E. in Washington D.C. The rented storage space was secured through my Master Card account.

Sometime in the spring of 2006, my Master Card statement indicated a large neither my wife nor I had made. It was in the amount of around $600.00 to pay parking and traffic fines in the District of Columbia. After some investigation, I reported the bogus charge to the police of the District of Columbia. I was subsequently contacted by Special Agent Derek Anderson.

Agent Anderson informed me that it appeared that an unauthorized person had obtained my credit card account and used the card to pay the traffic fine. At his recommendation, I contacted Master Card and filed an affidavit asserting that the charge was not mine. I also cancelled the credit card to prevent further abuse.

Several months later, the incident happened again, although on a larger scale as the charges were much more extensive and totaled several thousand dollars. I informed Agent Anderson, filed an affidavit with Master Card and again cancelled my account. After discussing matters with Agent Anderson, he stated that the likely identity theft occurred at the U-Haul facility at 26 K Street, NE in Washington, D.C.

Agent Anderson subsequently informed me that an arrest had been made.

I have been impacted by this crime in several negative ways.

First, my Master Card account was violated and unauthorized charges were made against the account.

Second, this required that the account be closed and re-opened on two separate occasions. This entailed extensive contacts with the credit card provider, the filing of police reports, the filing of affidavits with the credit card advisors, time spent on the phone with the District of Columbia trying to verify the charges made, etc.

4/17/2007

Third, I no longer feel that my belongings or my credit card information are safe at the U-Haul facility at 26 K Street, NE, and will now incur the expense, hassle and inconvenience of finding a new, more secure facility with, hopefully, more trustworthy employees and moving my possessions.

Finally, and most importantly, this incident has created much anxiety and insecurity with respect to my and my wife's credit card accounts We now worry about whether additional, personal financial information was obtained by the perpetrator and whether that information may have been shared with others.

Although we did not suffer any actual loss of money or property, the burden of closing and reopening the credit card account twice, altering recurring monthly charge holders (e.g. newspapers subscriptions, etc.), drafting and submitting affidavits, calling and working with Agent Anderson, etc., all take a toll in terms of time and emotion. No compensation for those losses is forthcoming from Mr. Dukett or Ms. Gray. They are thieves and should be punished as such.

Sincerely,

Graydon John Forrer

4/17/2007

**From:** David Snelbecker [mailto:███████████████]
**Sent:** Monday, December 18, 2006 2:40 PM
**To:** Derek Anderson
**Subject:** RE: Update.

We are very glad you are making progress with the case and look forward to further updates.

Our credit card company did not charge us for the fraudulent expenditures. However we did wind up paying several late fees at U-Haul. We immediately stopped giving them our credit card and switched to pre-paying by check, but they had some problems in their books making the switch and several of our checks were not immediately cashed. The late charges were still assessed to us, and it so far hasn't been straightened out. The total amount would be not more than $100. The main impact on us was the aggravation, inconvenience, and consumption of our time related to the incident.

Regards,

David